IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Matthew Jarvi** | : | |
| 1147 Creekview Drive | : | |
| Marysville, Ohio 43040 | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-CV-2047 |
| | : | |
| v. | : | Judge |
| | : | |
| **City of Columbus, Ohio** | : | Magistrate Judge |
| 90 West Broad Street | : | |
| Columbus, Ohio 43215 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**
**(Jury Demand Endorsed Hereon)**

Plaintiff Matthew Jarvi ("Plaintiff"), by and through undersigned Counsel, brings the following Complaint alleging violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and Ohio's antidiscrimination laws, R.C. Chapter 4112, against Defendant City of Columbus, Ohio ("Defendant").

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) because the claim is set forth pursuant to the civil rights laws of the United States of America.

2. The Court has supplemental jurisdiction over Count II, Plaintiff's state law claim, pursuant to 28 U.S.C. § 1367, because the claim arises out of the same set of operative facts to make the claim part of the same case or controversy.

3. Venue is proper pursuant to 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1 because a substantial part of the events giving rise to the causes of action occurred in Franklin County,

1

Ohio, within the Southern District of Ohio, Eastern Division where Defendant is headquartered and conducts its law enforcement activity.

## PARTIES

4. Plaintiff is a natural person who is a resident and citizen of the State of Ohio.

5. At all relevant times, Plaintiff had a disability, specifically vision loss in his right eye, as that term is defined by the ADA, 42 U.S.C. § 12102(1)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff has a record of a disability, specifically vision loss in his right eye, as defined by the ADA, 42 U.S.C. § 12102(1)(B), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff was regarded as having a disability, specifically vision loss in his right eye, as defined by the ADA, 42 U.S.C. § 12102(1)(C), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13). Plaintiff's disability substantially interferes with the major life activity of seeing as defined in the ADA, 42 U.S.C. § 12102(2)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13).

6. Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), Charge No. COLB1(51028)03092023; 22A-2023-03772, on or about March 8, 2023, within 300 days of Defendant discriminating against Plaintiff because of his disability. The EEOC issued a Notice of Right to Sue dated March 28, 2024, attached hereto as Exhibit 1. The OCRC issued Plaintiff a Notice of Right to Sue dated February 8, 2024, attached hereto as Exhibit 2. This Complaint is filed within 90 days of receipt of the EEOC's Notice of Right to Sue.

7. Defendant is a political subdivision of the State of Ohio pursuant to R.C. Chapter 2744. Defendant is an employer as that term is defined pursuant to the ADA, 42 U.S.C. § 12111(5)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(2).

**FACTUAL ALLEGATIONS**

8. During 2002, at the age of 3, Plaintiff suffered an injury that caused him to lose vision in his right eye. Despite Plaintiff's injury, he has 20/20 vision in his left eye, and he has been able to perform work and life related activities, including obtaining an unrestricted driver's license.

9. After graduating from High School, Plaintiff began his law enforcement career, working as a Dispatcher for the Dublin Police Department.

10. On or about July 22, 2019, Plaintiff applied for a Deputy Sheriff position with the Delaware County Sheriff's Office ("DCSO").

11. During July 2020, Plaintiff was accepted into the DCSO training program. As part of its training program, Plaintiff was required to attend the Columbus Division of Police ("CDP") police training academy, as DCSO did not operate its own academy.

12. On or about July 13, 2020, Plaintiff joined the CDP police training academy.

13. During Plaintiff's first week of class, he spoke with training sergeant, Laura Suber. Plaintiff informed Sgt. Suber that he did not want to be treated differently than anyone else because of his vision and wished to be treated the same as any other cadet. Sgt. Suber replied, "We'll do this one day at a time."

14. The CDP training academy hosted DCSO cadets, CDP cadets, and other area agency cadets.

15. Plaintiff participated in in all training activities with CDP cadets, except for CDP specific policy and procedure training.

16. Plaintiff was required to perform driving, shooting, and defensive tactics in the same training sessions as all the other cadets at the academy.

17. Plaintiff was held to the same standards regarding driving, shooting, and defensive tactics as all other cadets, including CDP cadets.

18. Plaintiff was scored by CDP training officers, and he was told by several training officers that he was performing at a high level.

19. Based on Plaintiff's observation and conversations with trainers, it was likely that Plaintiff would have been in the top third of the CDP class had his scores been included with the CDP class.

20. The only time Plaintiff failed a driving, shooting, or defensive tactics test at the CDP academy was a reverse driving course. On Plaintiff's second attempt, he passed the reverse driving course.

21. During the training academy, it is typical for cadets to fail one or more tests and require a second attempt. Plaintiff's failed initial reverse driving test was not unexpected or considered an issue by Plaintiff's trainers.

22. On or about February 12, 2021, Plaintiff graduated from the CDP training academy, and he returned to DCSO for field training.

23. At the conclusion of Plaintiff's training, Sgt. Suber and others informed Plaintiff how impressed they were with his performance. Sgt. Suber said that she believed that Plaintiff was the first person with monocular vision to complete CDP's academy.

24. Over the next several months, Plaintiff worked with field training officers at DCSO and performed well.

25. Plaintiff graduated field training and became a full DCSO Deputy Sheriff where he works the 2:00 p.m. to 10:00 p.m. shift.

26. While working as a DCSO Deputy Sheriff, Plaintiff does not require any accommodations to successfully perform the functions of his job.

27. Plaintiff is a busy solo unit officer, has been assigned without restriction to field patrol, carries a firearm and other weaponry, drives a DCSO cruiser, and has conducted numerous felony level arrests.

28. During his tenure with DCSO, Plaintiff has received positive performance reviews, receiving all meets or exceeds expectations ratings.

29. Plaintiff has been lauded for being an active officer who was willing to perform overtime work and grow as a Deputy Sheriff.

30. Throughout Plaintiff's time with DCSO, he has been required to requalify on shooting, and each time Plaintiff has requalified without issue.

31. During 2022, Plaintiff learned about the CDP lateral transfer program, where officers from other divisions or agencies could join the CDP in a fast-tracked application.

32. Plaintiff wanted to work for a larger department and serve the City of Columbus, so Plaintiff applied for the lateral transfer program.

33. Based on Plaintiff's strong performance at the CDP training academy, as well as his successful first year as a Deputy Sheriff with DCSO, Plaintiff knew he would be an excellent candidate.

34. In fact, in the year after Plaintiff graduated from the CDP academy, Plaintiff was encouraged by CDP training officers, as well as several of his academy classmates, to apply for the lateral transfer program, as they, too, knew Plaintiff would be successful at CDP.

35. During September 2022, Plaintiff applied for the lateral transfer program. After the application was received by CDP, Plaintiff submitted to a background check and polygraph

5

test. On November 16, 2022, CDP provided Plaintiff a conditional offer of employment. Plaintiff merely had to complete a medical examination scheduled for January 3, 2023.

36. After receiving the conditional offer of employment, Plaintiff submitted to a medical test, as well as a drug screen. Part of the medical test was a visual acuity test. Plaintiff demonstrated 20/20 vision with his left eye, but he was not able to complete the test with his right eye due to his vision loss.

37. After the medical test was complete, Plaintiff was alerted by CDP on or about February 2, 2023, that his application would be withdrawn, as he did not demonstrate proper visual acuity in his right eye.

38. Plaintiff was not afforded any opportunity to demonstrate that he could perform the functions of a police officer, as he had been performing the functions with DCSO without accommodation.

39. CDP was aware that Plaintiff successfully performed law enforcement duties at DCSO.

40. CDP was aware that Plaintiff successfully completed its CDP training.

41. CDP was aware that the law enforcement duties at DCSO were performed in basically the same manner and circumstances as those duties were performed by CDP police officers.

42. CDP relied on its blanket ban of candidates with monocular vision without considering whether, as an individual who had successfully completed training and had months of successful job performance as a field law enforcement officer, Plaintiff could safely and effectively perform the job duties of a police officer.

43. Plaintiff's monocular vision does not make harm any more probable arising from his job performance as a police officer than the imperfect vision of binocular candidates and incumbent officers employed by CDP.

44. Plaintiff's monocular vision is not a direct threat to the health and safety of his coworkers or the general public.

45. CDP failed to conduct an individualized inquiry regarding Plaintiff's abilities to determine whether Plaintiff's disability disqualifies him from being a CDP Police officer.

46. CDP failed to engage in the interactive process.

47. Apart from stereotypical reaction to monocular vision and highly improbable hypotheticals, CDP's blanket ban lacks any relation to the safe and effective performance of the job duties of a police officer.

48. Plaintiff was barred from the lateral transfer program based solely on CDP's discriminatory animus against Plaintiff's disability.

## COUNT I: DISABILITY DISCRIMINATION, AMERICANS WITH DISABILTIES ACT
## 42 U.S.C. § 12101, *et seq.*

49. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

50. Defendant withdrew Plaintiff's conditional offer of employment as a police officer with the CDP solely because of his disability, specifically vision loss in his right eye.

51. Plaintiff could perform all of the functions of the police officer position with the CDP without accommodation, as evidenced by the fact that he graduated from the CDP training academy without an accommodation and he had been working as Deputy Sheriff with the DCSO for more than a year at the time the conditional offer of employment was withdrawn.

52. Plaintiff was not a direct threat to himself, other officers, or the public as evidenced by the fact that he graduated from the CDP training academy without an accommodation and he had been working as Deputy Sheriff with the DCSO for more than a year at the time the conditional offer of employment was withdrawn.

53. CDP conducted no individualized inquiry regarding Plaintiff's abilities to determine whether Plaintiff's disability disqualifies him from being a CDP Police officer.

54. Based on the foregoing, Defendant discriminated against Plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12112.

### COUNT II: DISABILITY DISCRIMINATION, R.C. CHAPTER 4112
### R.C. 4112.02(A)

55. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

56. Defendant withdrew Plaintiff's conditional offer of employment as a police officer with the CDP solely because of his disability, specifically vision loss in his right eye.

57. Plaintiff could perform all of the functions of the police officer position with the CDP without accommodation, as evidenced by the fact that he graduated from the CDP training academy without an accommodation and he had been working as Deputy Sheriff with the DCSO for more than a year at the time the conditional offer of employment was withdrawn.

58. Plaintiff was not a direct threat to himself, other officers, or the public as evidenced by the fact that he graduated from the CDP training academy without an accommodation and he had been working as Deputy Sheriff with the DCSO for more than a year at the time the conditional offer of employment was withdrawn.

59. CDP conducted no individualized inquiry regarding Plaintiff's abilities to determine whether Plaintiff's disability disqualifies him from being a CDP Police officer.

60. Based on the foregoing, Defendant discriminated against Plaintiff because of his disability in violation of Ohio's antidiscrimination laws, R.C. 4112.02(A).

**WHEREFORE**, Plaintiff Matthew Jarvi prays for Judgment in his favor, back pay, front pay or hiring as a Police Officer with the CDP, pain and suffering, compensatory and non-economic

damages in excess of $75,000, attorneys' fees, costs, pre- and post-judgment interest, declaratory and injunctive relief, and any other relief to which Plaintiff may be entitled.

                                              Respectfully Submitted,

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
**The Knoll Law Firm, LLC**
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com
*Trial Attorney for Plaintiff Matthew Jarvi*

*s/John S. Marshall*
John S. Marshall (0015160)
Samuel M. Schlein 0092194)
**Marshall Forman & Schlein**
250 Civic Center Drive, Suite 480
Columbus, Ohio 43215
Telephone: (614) 463-9790
Facsimile: (614) 463-9780
Email: jmarshall@marshallforman.com
       sschlein@marshallforman.com
*Co-Counsel for Plaintiff Matthew Jarvi*

## **JURY DEMAND**

Plaintiff requests a trial by jury on all issues set forth herein.

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
**The Knoll Law Firm, LLC**
*Trial Attorney for Plaintiff Matthew Jarvi*